Ms. Clark, will you call the next case, please? 3090362, consolidated with 3090433, OSF Healthcare System, et al, Equity Trust Comp, v. Virtue, Novak, Comp, CrossFit League, by Julie Eister. Is it Eister? Yes. Ms. Eister, would you approach the mic? 5th Police Department, Julie Eister, on behalf of the Defendant Appellant, Gertrude Novak, seeking to have the trial court of Peoria County determination of an adjudication of OSF's lien reversed. Gertrude Novak was involved in a motor vehicle accident, and following said accident, she received care and treatment at OSF's facility in Peoria, Illinois. At the time of the accident and her treatment, Ms. Novak had Medicare as well as a supplemental insurance. Ms. Novak incurred medical expenses at OSF of $187,000. OSF, in the months following her release, after repeated attempts and requests by Ms. Novak and myself, refused to submit the bill to Medicare for payment and left the bill unpaid. All of her other providers were paid by Medicare when the case was finally resolved with the negligent driver. The last lien holder was OSF. They filed an adjudication or petition to adjudicate their lien. The trial court determined that they were entitled to one-third of the settlement as the only remaining medical lien holder and awarded them $100,000. We're seeking to have that order reversed. And the real issue in this case is whether or not a health care provider, such as OSF, has the choice whether or not to submit a patient's medical expenses or their expenses for a patient to that person's Medicare or any other health insurance, or if they have the option to instead file a lien under the Health Care Services Lien Act. In this particular case, OSF chose not to submit her bills to Medicare for payment and instead chose to have the bill remain unpaid and asserted the lien against the settlement proceeds. Would that preclude you as her attorney from submitting the bills? Yes, it would. Medicare, unlike any other insurance, you cannot submit bills directly. And my position is that Medicare, although it is a government entity, that it is the same, that they're a guarantor of the medical expenses, but I view them as the same as an insurance company, as same as Blue Cross Blue Shield. A Medicare recipient does pay a premium every month to maintain Medicare benefits. So similar to a Blue Cross Blue Shield where you have to make your monthly payments, you do as well with Medicare. Blue Cross Blue Shield and any other insurance company, you can submit the bills directly for payment. In this particular case, because it's Medicare, you cannot submit the bills yourself. Those only can come from a medical provider. There is documentation in the record that I did contact Medicare to have these bills paid. I received correspondence from Medicare, which is contained in the record, where after contacting OSF, OSF informed them that another insurance company was primary, referring to the defendant's insurance company, the negligent driver's insurance company, progressive, as primary. So based upon that, Medicare then said, well, we're not primary, we're secondary. Our position is that the defendant's insurance company, the negligent driver's insurance company, would not be primary. Mrs. Novak's medical payment coverage under her own automobile policy would be primary, but she only had a $5,000 limit, which was exhausted prior to her treatment at OSF. OSF takes the position that progressive would be primary, but progressive has absolutely no obligation to Mrs. Novak as an injured person, that they're insured injured, to pay any of her medical expenses until and at what point there would be a trial and a judgment. If they enter into settlement negotiations prior to filing suit and a trial and a verdict, that's one thing, but they have absolutely no obligation to pay any of her medical expenses prior to settlement or verdict. And OSF takes the position that because Mrs. Novak had Medicare, that Medicare is a secondary payer, which they are. The Medicare and actually the statute states that Medicare is a secondary payer when there is a primary out there. Primary, as defined by the Act, which is 42 CFR 411, I think .52 and .53, deals with Medicare as a secondary payer. And what it says is that if someone else is out there as primary, another health insurance company, perhaps she had her own Blue Cross Blue Shield policy or something through work, that would be primary. Her med pay on her auto would be primary. And in certain circumstances, they lump in the liability carrier, in this case would be Progressive, as primary. What they say, though, is when it's a situation where the at-fault liability carrier, so in this particular case Progressive, when the beneficiary, who would be Mrs. Novak, makes a claim and they refuse to pay her medical expenses, then OSF can submit the bill. In this particular case, that's what happened, is that Progressive was not sent the bill by OSF. OSF never billed Progressive. Progressive got the bills from my office and they did not pay them. I have never had a circumstance, and I handle approximately 200 personal injury cases a year, where a defendant-negligent party's insurance company pays medical expenses prior to any final settlement. They just give you one lump sum settlement at the end. They don't pay any medical expenses. So in this particular case, OSF takes the position that Medicare is a secondary payor, so they don't even have to submit the bill. My position is whether or not Medicare would have paid the bill or not is not the issue. The issue is their absolute denial and refusal to submit the bill at her request, at Mrs. Novak's repeated request, for payment. Medicare, in this particular case, paid every other medical expense that she had related to this motor vehicle accident, knowing that Progressive was not going to make payment on that, on those expenses, until there was a final settlement, which there was approximately a year after the auto accident. Medicare, in their standards, state that if it doesn't aggrieve that there's going to be payment by, in this case, Progressive within 120 days, then they will make payment on the medical expenses. But in this particular case, Medicare could never even make that determination because OSF refused to submit the bills to them for payment. As a result, they held their lien out and recovered $100,000 on a $187,000 bill, as opposed to what Medicare would have paid, which would have been considerably less. Like I said, all her other medical expenses were paid by Medicare, which she did pay back out of the settlement proceeds. In this particular case, as a result of OSF refusing to submit the bill for payment, Mrs. Novak was deprived of the benefit of her premiums to Medicare and her benefits from Medicare. There is no specific case dealing with the Health Care Services Lien Act with whether or not a provider must submit to insurance. But as I stated in my brief, I don't think that the legislature would have anticipated that a provider would not want to get paid immediately from a health care insurance or other guarantor of the medical expenses and would rather leave their lien out for years and then recover later. Isn't that something that you have to consider when you're negotiating the settlement? That they have their lien out there? No. In this particular case, the settlement amount was the policy limits. There was only a set amount of money, and it was $300,000. Because of the limited amount of insurance available from the at-fault driver, the $300,000, when handling a personal injury claim, it's important to have the medical expenses paid by some collateral source. Because oftentimes that's the only way that the injured party is going to be benefited and actually receive money. Otherwise, everything would go to the attorney and medical expenses. And that's the purpose of the collateral source rule. In this particular case, if Mrs. Novak was in this accident and there's $300,000 worth of insurance, without having some other collateral source pay her medical expenses like Medicare had paid the other medical expenses, and we had all liens, then the liens would have been 40% of the $300,000. But in this particular case, because everyone else was paid, the only lien holder was OSF, so they got one-third of the settlement. And there is no case on point because the statute does not state specifically that a provider must submit it to health insurance. But it doesn't say that they don't have to. The intent for the act was so that providers would provide care and treatment to poor, non-paying patients. And our position is that if someone has health insurance, they are not a poor, non-paying patient. They are just a patient with insurance. The purpose of the lien act is so people who can't just go to any provider, give them their insurance card, and get treatment can go to these providers and say, I don't have insurance. I have a personal injury settlement. Would you treat me in exchange for a lien for your services on my settlement proceeds? In this particular case, and although the statute doesn't state it, the statute does state that any amounts not recovered on the lien, the provider can then seek other collection avenues for those. So in this particular case, Gertrude Novak's bill was $187,000. OSF received $100,000 after adjudication of the lien. Under the act, OSF, by law, could then start collection proceedings against Mrs. Novak for the $87,000 that remains. Now, they agreed not to, claiming that under the Medicare Payor Act that Medicare recipient, a hospital cannot collect on the balance of the bill. But that's sort of twisting the statute, too, because you're saying, well, Medicare wouldn't pay the bill, but now we can't seek the extra $87,000 because Medicare wouldn't let us. The situation is that they just agreed not to seek the remainder of the bill. But by law, they can, and oftentimes medical providers do. And in this particular situation, you have a lady who had Medicare who would have paid the entire bill other than what she would have been responsible for, her minimum amount. And instead, she had to pay $100,000 out of her settlement, plus she could potentially be liable for another $87,000 when she had valid insurance. Another scenario which is absolutely relevant to this case is a situation where if there had not been a settlement with Mrs. Novak's, between Mrs. Novak and the other driver not guilty, and there was a zero verdict and zero recovery, OSF has now refused to submit the bill to Medicare, which you only have 18 months to submit a bill for payment to Medicare. So if you're waiting for the litigation process and it's several years down the road, OSF still has a $187,000 bill outstanding, which would have been paid by Medicare. They refused to submit it, and now my client would be responsible for the $187,000. And that's a very real possibility anytime you take a case to trial. In this particular case, OSF is not saying, it is our policy never to submit a bill to Medicare for payment. What they're saying is, in this particular case, we chose not to. And as I stated in my brief, the reason is, had they submitted it to Medicare, they probably would have received maybe $20,000 or $30,000 on their bill. But by holding the lien out and the bill unpaid, they received $100,000 from the settlement. And it is a situation where OSF is looking to insurance policies and limits of the at-fault drivers to determine whether or not they're going to submit their bills to Medicare or not. And unlike Blue Cross Blue Shield, where if my client just had Blue Cross Blue Shield, she went to OSF, she could have received the bill and submitted it herself. In this particular case, the only person that could have submitted the bill was OSF, and they refused not to. So as a result, she had to pay an additional $70,000, $80,000 on a bill, and they received an extra $70,000 or $80,000 on their bill as a result. But this is not really an extra $70,000. I mean, the charges for the health care that she was provided totaled $187,000. The Medicare discount would have been maybe a total of, what, $150,000 if you're saying they would have paid $30,000. So that's the windfall, really, that we're talking about. We are. And in this particular case, that's the reason people have insurance, and that's the reason she's paid her premiums, is for that contractual adjustment that she was entitled to had Medicare paid. As a result of OSF's refusal to submit it to Medicare, she was deprived of that contractual adjustment, which is her benefit, which is why I refer to the collateral source rule, because the Supreme Court has held that if there is a benefit or a windfall, it should go to the injured party. In that case, they're dealing with whether or not the defendant should be responsible for the entire amount or reasonable charges. But in this particular case, it's the same theory, that OSF did benefit from Mrs. Novak being a patient as a result of a motor vehicle accident, as opposed to her being a patient who just fell down the stairs at her own home. If she had fallen at home and went to OSF, she would have received the same treatment, the bill would have been the same, except the bill would have been submitted to Medicare, and Medicare would have paid a reduced amount. But because there's this lien act out there, and they chose not to submit the OSF is actually reaping the benefits and receiving a windfall from Mrs. Novak's misfortune of being involved in a motor vehicle accident, that then she has to pursue claims against the negligent driver. Are you suggesting, in the back of my mind I keep thinking that our lawmakers have passed a statute requiring every driver to carry liability insurance. Are you suggesting that OSF's decision to maximize the compensation they receive from that insurance company is somehow contrary to public policy? It relieves the burden on Medicare. No, it absolutely is against public policy, because if it is a situation where the defendant driver had $20,000 worth of insurance, and if OSF would have been the last lien holder, they would have got $6,666. In that situation, OSF would have submitted the bill to Medicare and received $20,000 or $30,000 instead. Our argument is that it's against public policy to pick and choose when you're going to submit a patient's bills to Medicare, depending on. Thank you. Thank you. Mr. Cox? A couple of points I want to address right away, since this is our response to argument. Counsel continues to refer to insurance and supplemental insurance and premiums paid in arguments of that sort, and yet there's not one shred of evidence before any of you in this case that there was ever any health insurance, supplemental or otherwise, or that they paid any premiums whatsoever. This is a Medicare case. It has nothing to do with health insurance. It has nothing to do with premiums paid. It has nothing to do with supplemental health insurance. Counsel even admitted in open court at trial that she has never seen a case, and yet she continues to argue that. I need to make that very clear because there shouldn't be any misunderstanding on that. This case is fairly simple as far as the facts go, and there was a Medicare eligible person who was injured in an automobile accident with $300,000 of third-party liability coverage in which we filed on behalf of the hospital a 770-ILCS-2310. That is not uncommon. I mean, that's how the system works. The legislature has spoken. They have divided up how people, when you have $300,000 in this case or whatever the liability coverage is total, how are we going to split that up among the parties? There are different players. You've got the injured party. You've got the attorney representing the injured party. You've got health care providers and so on, and they've decided on how to divvy up that money. It's statutory, and the statute also states that the calculations, the distribution, if you will, cannot be changed except by the lien holder themselves. The lien holder can always accept less, and that happens a lot too where they reduce the lien by negotiation. This has nothing to do with insurance premiums. It has nothing to do with health insurance coverage or supplemental policy, and it's a little aggravating, quite frankly, that we always have to respond to this, and there's no evidence in the court file at all to that effect. Also, contrary to what counsel argued, that Medicare law provides for us to go after Mrs. Novak after receiving $100,000 on the lien. No. Once there is, number one, under Medicare regulations, Mrs. Novak cannot be billed. She's Medicare eligible and cannot be billed for these charges, period. Any argument to the contrary, simply the rules and regulations that are part of the record that have been submitted to the court make it very clear she cannot be billed. She cannot be balance billed on this lien issue. If there was a trial, as counsel suggested, and there was no recovery, Mrs. Novak cannot be billed for the $187,000 plus. If Medicare could be billed for that, then they would be. If the time to bill Medicare has passed, there is simply no billing at all. Mrs. Novak cannot be balance billed or otherwise. She's Medicare eligible. Those things need to be straightened out, I think, from the very get-go, because it's just simply not the case to say otherwise. I don't have any dispute with the facts as stated by counsel. She did a very fine job in kind of going through the facts of the case. They're fairly simple. There's no dispute that there was a lien in this case. There's no dispute that Judge Borden, pursuant to 770 ILCS 2310, awarded St. Francis $100,000, one-third of the recovery. There's no doubt that she was Medicare eligible, she being Mrs. Novak. The issue before the court isn't whether they should have submitted this to insurance. That's the first issue that appears in the brief, the appellant's brief. The issue is if you've got a person who's Medicare eligible, and they're involved in an accident, and there's liability covers, and there's a settlement for $300,000, is a medical provider then allowed to assert their lien? It's really the issue before the court. And the review by Judge Borden was to look at federal law, look at relevant case law, and state law. And that's what I'm prepared to do right now. And I think his reasoning, citing the Mary Miller case, which cited the American Hospital Association case, clearly makes it that the Medicare Secondary Payer Act applies in this case. And the Medicare Secondary Payer Act, if I may, the relevant part of that, is that payment under this subsection shall not be made to the extent that payment has been made but can reasonably be expected to be made under an automobile or liability insurance policy or plan. Primary plan means an automobile or liability insurance policy. That is straight out of the Medicare Secondary Payer Act. What is astonishing to me, and I hope it would be to your honors and the panel of justices in this case, is that the Medicare Secondary Payer Act was completely ignored in the appellant's brief, completely ignored in all of the information supported by counsel on their position. And yet it's very relevant. It talks about that Medicare is, in this situation, secondary. There are federal rules and regulations. We have cited to those and provided those to counsel and to the court, one of which is 42 CFR 411.32, the basics for Medicare secondary payment. And it's very short, so I'll just read it to the court because I think it's very important. Medicare benefits are secondary to benefits payable by a primary payer, even if state law or the primary payer states that its benefits are secondary to Medicare benefits or otherwise limits its payments to Medicare benefits. There's another section in the same 42 CFR 411.35, and I'm going to paraphrase it a little longer. If the amount provider receives from liens exceeds the amount payable by Medicare, provider may retain payment without violating the Medicare contract. In this case, federal law is stating that, number one, we want you to assert any claim you have against other insurance companies, other insurance policies. We want you to exhaust that. In 1980, the Medicare Secondary Payer Act was enacted so that it could relieve the burden on taxpayers, so that Medicare is not paying for all these. If there is other private insurance, those private insurance policies should be paying on this. The regulations say if the law allows you to recover more than what you would have recovered under Medicare, you're allowed to keep that under law, and it's not a violation of Medicare rules and regulations. Justice Borden's decision, he cited the Mary Miller case, which was a central district case in federal court. Just out of curiosity, what if Ms. Novak was a very wealthy person, and the action against the underlying defendant was lost? If she owed you $187,000, and could you sue her, collect $187,000, and not sue Medicaid? No, we could not. If she's Medicare eligible, you cannot bring a courier. So if there wasn't this outstanding debt, you would go to Medicare, and that would be the end of your… That's right. Okay. Ms. Novak, anybody who's Medicare eligible cannot be billed. Okay. There's really an option. Then there's not an income issue. That's correct. Judge Borden cited Judge Mims' decision in Miller, and Miller cited the American Medical Association case. And a reading of those two cases makes it very clear. As he points out, in the Mary Miller case, Judge Mims pointed out, courts have clarified that this administrative regulation may not be applied to limit the statutory right of Medicare providers to recover their full charges directly from liability insurers. It goes on to talk about the different regulations that basically say, and I'm going to paraphrase, that if you have liens, you can go ahead and pursue your liens under the lien laws and not submit these charges. As a matter of fact, you are really not supposed to submit the charges to Medicare. Medicare is secondary. The absence of any addressing the Medicare Secondary Payer Act by opposing counsel, I don't know. Maybe you can read into that what you will. But I think it's a little bit ironic that the Illinois Bar Journal in January's issue had a big article about this and went through how Medicare is secondary in these kinds of situations, and that Medicare is to be billed only after other insurance, private insurance, is exhausted. And that's what happened here. St. Francis exhausted their other insurance, private insurance, third-party liability coverage. Judge Borden was exactly right in following federal law. He followed the federal decisions. As a matter of fact, there are multiple decisions that are exactly consistent with the American Medical Association case cited in the Miller case, that was Judge Mims' decision, cited by Judge Borden in this case. And all those cases fully go through how third-party liability claims and the right to assert liens are not only valid, but that is the course of action that medical providers should take as opposed to billing Medicare, Medicare being secondary. And in the act itself, it talks about what's primary, and auto policies are primary, contrary to what was argued by counsel just a little bit ago. That really brings us to ILCS, the 770-ILCS-2310. And like I stated before, the statutory limits under this section may be waived or otherwise reduced only by the lien holder. And the legislature, as you know, amended this in 2005. They had every right to incorporate. If they thought that some lien right should be reduced, they had the right to incorporate that into the act. They did so with respect to work comp. Work comp, the act addresses that and says work comp recoveries are not subject to the Medical Services Lien Act. They could have reduced it in any other form. And certainly Medicare issues were as prevalent then as they are today. We have talked a little bit in our brief not only about the law that supports our case, but some of the arguments in this case. And I'm going to just touch on a little bit with the remaining time I have on what we think are just some – there's some resistance, if I will, to look at the law, to look at the case law, to look at the federal law and look at the state law in the arguments being made. And while sanctions are never anything that anybody wants to – it doesn't bring anybody joy to even talk about sanctions. I asked the court to look at, in this particular case, if the federal law is governed by the Secondary Medicare Payer Act and the rules and regulations that have been submitted to the court and briefed not only at the trial level but again here at the appellate level, they're not even referred to at any time – thank you – not even referred to at any time in the briefing. There's not an attempt to distinguish that law by opposing counsel. The order by Judge Borden in this case referring to the Miller case and then the American Medical Association case contained in the Miller case cited by Judge Mim, there's no attempt to distinguish those cases. And like I said, there are other cases that follow the American Medical Association cases that are on point about the right to pursue a lien and not bill Medicare. And there's no attempt to distinguish any of that. Instead, there are arguments that there's private insurance or supplemental insurance or premiums that are paid and equities that aren't being taken into account. And there's no evidence to that effect. It's an appeal, if I may be candid with the court. I think we're here because when they wanted us to reduce the lien, we didn't do that. We asserted our lien rights, which the state of Illinois statutorily has allowed. And we didn't get paid in full. The amount of our bill was cut by $87,000. But that's what the lien law allows for us. That's how the legislature divvied up this type of situation. And because we didn't play ball, there's a price to pay. You have to defend, and you have to assert your lien, defend it if we appeal it. I just would respectfully submit to the court that that's not the case. You're going into the head of your opponent now, are you not? I mean, you're going into their mental processes or attempting to. I am. I'm attempting to try to explain why we're here. In my opinion, it may be well taken or may not be well taken. But in my opinion, we did not play ball with them when they wanted us to reduce the lien. Thank you. Thank you, Mr. Cobb. And you will have time to rebut. Ms. Ester? First, just to clarify on the issue of sanctions, OSF presented no evidence that there was any misconduct by myself or Mrs. Novak that would warrant sanctions, such as a petition to adjudicate a lien. Our litigation on the matter was not in retaliation for them not to negotiate the lien. In fact, my office at no point in time attempted to negotiate this lien because it was always our position that they were not entitled to a lien based upon the refusal to submit it to Medicare. There is in the record a letter from myself to Mr. Gregory of Coltham Gregory stating that I would pay them $10,000 or somewhere thereabouts, which is probably the equivalent of what Medicare would have paid on the bill, but nothing more than that. So this litigation is not in retaliation. It's as a result of OSF's refusal to submit the bill to Medicare. And the question that OSF does not answer is, why didn't they? Why wouldn't they? She had valid Medicare. They could have submitted it. The bill would have been paid by Medicare, as all her other medical expenses were. But the question is, why didn't they? Well, the answer is they didn't because they ended up getting an extra $80,000 because they refused to. So instead of Mrs. Novak getting that $80,000 benefit of her premiums, they got the benefit of her premiums. And that's the real question as to why they didn't submit the bill. They used the Medicare Secondary Payor Act as a shield as to why they would not submit it, but that's not correct. The Medicare Secondary Payor Act says that they can submit the bill if they don't believe that Progressive would make prompt payment. But their refusal was just out and out a refusal. They never submitted the bill to Progressive for payment. They never received a denial. Their position is we're not submitting it to Medicare, and the reason was they would recover more on their lien than they would had Medicare paid the bill. They make the argument, referring to the Mary Miller case, stating that under the lien act, they could not pursue my client for the $87,000 remaining. I don't believe that's correct. I don't believe that's a correct statement under the Medicare regulations. The Medicare regulations with regard to them pursuing anything in addition is after Medicare makes a payment. As with any insurance, if the insurance provider or the insurance provider makes payment, the provider, the health provider, cannot then go and balance bill for those contractual adjustments. That's what the Medicare Secondary Payor Act says. It's once we've paid the bill, you provider are then only entitled for your lien to those amounts that the patient would be responsible to pay. Their deductibles, their co-pays, that's it. We can't go after them for the contractual adjustment. But in this particular case, they twist it to say, well, we can't go after them for any amount remaining on the lien, and that's not true. And not only this situation, but any situation where you have a health insurance company willing to pay a bill and a provider refusing to submit it, they could, in the case of a wealthy individual, refuse not to submit the bill for payment. For instance, if someone was involved in a motor vehicle accident and they knew that person would be a wealthy individual, they would just not submit the bill to any insurance, pursue a lien, recover on the lien, and then pursue the patient for the difference. And if you take the lien act as saying they don't have to submit your bills to insurance and instead they can hold out a lien, they can absolutely do that. So I think it's a mischaracterization as to the Medicare Act and Medicare as a secondary payor. It's not a situation where Medicare would not pay the bill. It's a situation where they refuse to submit the bill to Medicare because they didn't want to take less on their bill for the contractual adjustments, and as a result they reap the windfall. Their position that the lien act allows them to do that I don't believe is a valid argument. The lien act doesn't state whether they can or cannot. It goes to statutory interpretation. The purpose of the lien act was to provide care and treatment to people who cannot pay, i.e., people who don't have insurance or independent resources to pay the medical expenses. Thank you. Thank you, Ms. Atkins. And Mr. Kahn? You have five minutes. I think the big point that we want to make on rebuttal or the reply is that the federal law that talks about this issue, the case cited by the judge in this case, Judge Borden, the Miller case, American Medical Association that Judge Minn referred to and all the other line of cases that follow that, talk about the 1980 act which makes Medicare secondary. And there's a complete and total disregard of that act, of the cases that talk about that act, talk about this situation, and there's not even an attempt to differentiate any of those cases, to even bring up the federal act and discuss that in this particular case. Instead, there are arguments of there being insurance, premiums paid, and that there's supplemental insurance, and that those insurance avenues should have been. Well, that doesn't even exist. They're not even before the court. Another argument is that Ms. Novak is somehow on the hook for the balance on that. That is a misrepresentation of the law submitted to the court, of the federal rules and regulations, of the Medicare rules and regulations, and a not-for-profit hospital who is AMA and Medicare eligible as a provider could easily lose their license if they were to balance bill or if they were to bill a Medicare eligible patient. It's just not true. In the rules and regulations submitted to the court, What about services that aren't covered at all by Medicare? You're saying that a senior citizen goes into the hospital and receives any service that isn't, even if they contractually obligate themselves to voluntarily pay, should they refuse to do so, you're saying that the hospital has no recourse against them? Yes. I believe that the law is pretty clear on that. If they're Medicare eligible, they cannot bill that patient. And I don't think there's any exception to that to my knowledge. They can't balance bill them. The only point, and this is minor, and it's really off the subject, and there may be cases where people do have Medicare supplemental insurance policies, because there may be some minor co-pays or minor deductibles that would be the person's obligation to pay. That's a little off the subject. The bill itself is never billed to the Medicare patient. If they're Medicare eligible, they cannot be billed. Counsel, you've requested us to consider sanctions for a frivolous appeal. How do you recommend that be done? I note in the class appeal no figures are mentioned. Do you have a ballpark idea of what the costs and fees are? Do you recommend we remand it to the lower court to conduct a hearing? How do you propose that be addressed? I think a remand to the lower court for a dollar figure, if the court feels that there's a justifiable cause for entering sanctions, that's what I would recommend, affirming Judge Borden's decision and remanding this for further hearing on the issue of damages with respect to sanctions. In closing, on behalf of St. Francis Medical Center and all medical providers, the Secondary Payor Act and the lien law is what Judge Borden followed in this case, along with the case law. None of that has been distinguished at all, nor even attempt to be distinguished by counsel. Thank you. Thank you both for your arguments today. We will take this matter under advisement and get back to you in the next part of the day.